## SPEAR & als. *v.* RICHARDSON.

In assumpsit upon a warranty for the alleged unsoundness of a horse sold, it is competent for the defendant, on cross-examination of a witness, who has testified that the horse had a cough for about two years in the foddering season, when kept on hay, to inquire whether other horses, owned and kept by the witness, and appearing well, and free from disease, would not cough when kept on hay in the winter, as this horse did.

So, where the plaintiff's witness has testified, on direct examination, that he heard the horse cough, and asked the defendant if he had not got the heaves, or a heave cough, it is competent for the defendant to ask the witness whether he ever saw any thing about the horse that indicated the heaves.

The testimony of a deponent on cross-examination, relative to the subject matter of his direct testimony, which is ruled out as incompetent, is to be excluded with it; and although the question on cross-examination may not be strictly confined to the subject matter of the direct testimony ruled out, the answer to it is to be excluded, when it is given in such form as to make it a repetition of the incompetent testimony ruled out, and the question does not necessarily require that the answer should be given in that form.

A question is not leading if it calls for a direct affirmative or negative answer, and it is no more suggestive of one than the other.

It is not a legal objection to a deposition that it was opened by an attorney of the court, employed as counsel in the cause, after it had been sealed up by the magistrate, and before it was filed with the clerk. According to the established practice, such attorney is to be considered the proper officer of the court, to receive and open the deposition, under the provision of the statute which requires depositions to be sealed up by the magistrate, and so delivered into court.

The proper mode of inquiry, to obtain the opinion of an expert upon the case, as shown by the proof, is to ask him what his opinion is upon a state of facts, such as appears from the evidence, hypothetically stated.

ASSUMPSIT, upon an alleged warranty that a horse sold by the defendant to the plaintiff was sound.

To prove the horse unsound, the plaintiffs called Azariah Williams, who owned the horse about five years, and testified that he had a cough for about two years in the foddering season, when kept at hay. On cross-examination the defendant proposed the following question to the witness: "Have you owned horses, and kept them in the same way as this horse, which horses appeared well and free from disease, but when kept at hay in the winter would cough as this horse did?" To this question the plaintiff objected, but the court permitted it to be put, and it was answered in the affirmative.

To prove the horse unsound, the plaintiff also read the

Spear *v.* Richardson.

deposition of John W. Morse, who testified that the horse, on a certain occasion, breathed differently from another horse which the plaintiff had; and added, my impression was (he had a touch of the heaves); but this statement in parentheses was omitted in reading the deposition, in accordance with the opinion of the court in this case, as reported in 34 N. H. 428. On cross-examination the following questions and answers were given in the deposition, and ruled out by the court, as being cross-examination upon the subject of the direct testimony, held to be incompetent, and omitted.

*Interrogatory 69.* What called your attention to the way he breathed?

*Answer.* Because he breathed like a horse that had a touch of the heaves.

*Interrogatory 85.* Did the horse heave badly, so that you could easily discover it, or how was it?

*Answer.* He did not breathe very hard, but so that I discovered it very quickly.

*Interrogatory 86.* Did he breathe so that any person, unskilled in detecting these defects, would at once discover it?

*Answer.* I should have supposed they might, if they took particular notice of the horse.

*Interrogatory 87.* Was he not pretty hard up with the heaves?

*Answer.* Not as bad off as I have seen horses.

*Interrogatory.* How badly off was he?

*Answer.* He was bad enough to show he had the heaves, in my impression.

The plaintiff read the deposition of Charles E. Aldrich, the 5th interrogatory and answer being as follows: State whether you were in the barn about the time the defendant got the horse home, and what took place between you and him, and what was said about the horse.

*Answer.* I was in the barn soon after he got the horse

home, and heard him cough. I asked the defendant if he had not got the heaves, or a heave-cough. He said he had not. Nothing farther was said, that I recollect. On cross-examination the defendant proposed the 15th interrogatory, to wit: Did you ever see any thing about the horse that indicated the heaves, from the way he breathed?

*Answer.* I don't know that I ever did. I never took particular notice to see. The plaintiff objected to the 15th interrogatory and answer, but the court admitted them.

The defendant introduced the deposition of Jacob B. Elliot, in which the 6th interrogatory is as follows: Did he ever have a cough, to your knowledge, and if so, when and what kind of a cough was it?

*Answer.* I never knew him to have any cough.

The plaintiff objected to this interrogatory, as leading, and the objection was overruled by the court.

The defendant introduced the depositions of Amos C. Elliot and others, which, it was admitted, were sealed up by the magistrate by whom they were taken, delivered by him to the defendant's attorney, and opened by the attorney before they were filed with the clerk. The plaintiff objected to the admission of these depositions, but the court permitted them to be read.

Said Amos C. Elliot's deposition contains the following: *Interrogatory* 8. State how much you knew of the horse while L. W. Richardson owned him?

*Answer.* I knew him all the time said Richardson owned him. (I told him about the horse, and advised him to get him to match his other horse.) I worked for said Richardson a good part of the winter that he owned him. I drove the horse some; drew logs with him and the other horse.

*Interrogatory* 43. From your knowledge of the horse, should you be willing to swear that he did not cough while Williams, L. W. Richardson, or the defendant, owned him?

*Answer.* I should be willing to swear that I never heard him cough. Colts and horses are subject to have the horse-distemper and cough. I cannot state that he never did cough. (I should say, from his appearance, that he never had a cough.)

The plaintiff objected to that part of the answer to the 8th interrogatory inclosed in parentheses, as irrelevant, and also to the last statement in the answer to the 43d interrogatory — inclosed in parentheses — as being no answer to the question, and also as being drawn from the deponent by a suggestion from the defendant's counsel; but the court overruled the objections.

For the purpose of contradicting Azariah Williams, who had testified that the horse had a cough while he owned him, the defendant introduced the deposition of P. W. Hastings, who testified that Williams, while he owned the horse, stated to him that he was sound.

The plaintiff objected to this testimony of Hastings, but the court admitted it.

The plaintiff introduced E. B. Parker as a witness, to prove the warranty. He testified that he bought the horse of the defendant for the plaintiffs, and that the defendant warranted him sound and kind. He farther testified that, a short time before, he had bought another horse of the defendant for the plaintiffs, of which he had taken a bill of sale, warranting the horse sound and kind, so far as the defendant knew or had ever heard.

The defendant contended that he warranted the horse in question in this suit in the same conditional manner, and, to contradict Parker, read his affidavit, taken *ex parte*, in which are contained the following interrogatories and answers:

State your recollection as to how the bill of sale read that you took of the last horse.

*Answer.* " Spear, Burke & Co., bought of Henry Rich-

ardson, one black horse. Received payment, $150. (Signed) Henry Richardson."

I have another bill of sale in my mind, which was : " Spear, Burke & Co., bought of Henry Richardson, one 8 years old black horse, which is warranted sound and kind, for any thing I ever knew or heard." I have both these bills of sale in my mind, but of which horse I am not able to recollect.

Was it or not the bill of sale of the first one in which the clause was as to the warranty ?

*Answer.* I don't recollect.

What is your impression as to its being in the bill of sale of the last horse ?

*Answer.* My impression is that it was not in the bill of sale of the last horse.

Did not the last bill of sale state in it that said horse was warranted sound and kind for any thing he ever knew or heard of ?

*Answer.* I don't recollect. There is a good deal of confusion in my mind about those bills of sale, and I do not recollect about them.

The plaintiff objected to the introduction of this affidavit, but the court admitted it.

Doctor Dadd was examined as an expert by the defendant, and the following question was proposed to him :

Suppose a horse, apparently well and in good condition when put on board the cars, should become so much excited that the sweat ran from him ; should, in the latter part of October, remain on board the cars over two nights, with a latticed door, and an opening in the front of the car, without food or clothing ; should, on arriving at his place of destination, a distance of 180 miles, be sick, in a bad condition, have no appetite, breathe very hard, draw up his belly when he breathed, so that there would be a ridge between the short ribs and the hips—to what would you attribute the condition of the horse ?

There was evidence tending to show the facts assumed by the defendant in the question. The plaintiff objected to the question, but the court permitted it to be put.

The witness answered, that if the horse was sound when put on board the cars, he should consider the treatment on the passage to be the cause of his subsequent condition.

The jury returned a verdict for the defendant. The plaintiff, having excepted to the foregoing rulings of the court, moves that the verdict be set aside.

*D. Clark*, and *A. W. Sawyer*, for the plaintiffs.

*G. W. Morrison*, and *H. Bingham*, for the defendant.

SAWYER, J. The question proposed to Azariah Williams did not exceed the proper limits of a cross-examination. On the direct examination, in answer to the plaintiff's inquiries, he had testified that the horse had a cough for about two years in the foddering season, when kept on hay. Whether other horses were or not affected in the same manner, under similar circumstances, was proper to be considered by the jury, in determining the nature and character of the cough. Besides, the defendant was at liberty to test the extent and accuracy of the witness' observation and knowledge on the subject of horses' being affected with a cough under the circumstances stated. No precise rule can be laid down as to the latitude to be allowed on cross-examination, the aim of which is to test the intelligence or integrity of the witness. That must be left in a great measure to the discretion of the presiding judge. It does not appear to have been improperly exercised in this case, in permitting the question to be put.

The cross-interrogatories in the deposition of John W. Morse were properly ruled out. They were all based upon the statement made by the witness in answer to questions proposed on the direct examination, that the

horse had a touch of the heaves, as the witness inferred from his breathing, which was ruled out. If any doubt can arise upon this point, in reference to any of these interrogatories, it must be in relation to the 69th and 86th. The 69th: What called your attention to the way he breathed? may perhaps be considered unobjectionable, so far as the question is concerned, as being proper cross-examination upon that part of the direct testimony which was admitted, namely: "he breathed differently from the other horse;" but the answer to this is clearly inadmissible, on the ground that it is not a proper form of answering the question. The answer is, "Because he breathed like a horse that had a touch of the heaves." If the witness had been upon the stand, and his statement, on the direct examination, that the horse had a touch of the heaves, had been objected to and ruled out, as it was when offered in the deposition, he would have been required, in answer to the 69th interrogatory, to describe the appearances in the breathing of the horse which he understood to be like the breathing of a horse that had the heaves, instead of stating that his breathing was like it. It is to be supposed that the answer, as given in the deposition, was submitted to by the plaintiff's counsel, without objection to the form in which it was made, only because, on the direct examination, the deponent had stated the same thing — that the horse had a touch of the heaves. When that was excluded, the answer, in the same form and to the same effect to a question on cross-examination, which did not necessarily require that kind of answer, was properly excluded with it.

The 86th: "Did he breathe so that any person unskilled in detecting these defects, would at once discover it?" manifestly refers to the statement on the direct examination which was excluded. The defect intended by the question must have been understood by the witness and the jury to be the touch of the heaves, indicated, as the

witness stated, by the breathing. This question and the answer to it were, therefore, properly ruled out, as cross-examination, on the subject matter of that part of the direct examination which was excluded.

The whole object of the 5th interrogatory, on the direct examination of Chas. E. Aldrich, would seem to have been, so far as it relates to what was said between the witness and the defendant, to lay before the jury the statement of the witness, that, on hearing the horse cough, he asked the defendant if he had not got the heaves, or a heave-cough, and thus produced the impression that something in the appearance of the animal indicated to his mind that he was thus diseased. The effect of the answer is clearly to give that impression; and no other part of the conversation has any bearing on the case, in any way favorable to the plaintiff. It was competent for the defendant to remove that impression, if he might, by the 15th cross-interrogatory, whether the witness saw any thing about the horse that indicated the heaves, from the way he breathed? taking the risk, of course, of an affirmative answer.

The interrogatory in the deposition of Jacob B. Elliot, objected to as leading, is not open to that objection. The form in which it is put, looking to the whole question, is not such as to instruct the witness which way to answer it. If, from the first branch, " Did he ever have a cough, to your knowledge?" it could be gathered that a negative answer to that part of the question was desired, the addition of the other branch, " and if so, when and what kind of a cough was it?" would seem to indicate that an affirmative was expected. The form of the question, " Did he ever have a cough?" is no more suggestive of a negative than an affirmative answer, when considered without reference to the subject matter of the inquiry; at least, no more so than the form, " Did he or not ever have a cough?" and in that form the question would not be considered as leading.

The statute which requires depositions to be sealed up by the magistrate, and so delivered into court, has, by a long and well settled practice, received the construction that a delivery of the deposition, sealed, to the attorney in the cause, is such a delivery into court as the statute contemplates. For this purpose he is held to be the proper officer of the court to receive and open the deposition. It would be requiring an idle ceremony to hold that the depositions must be placed in the hands of the clerk, that he may break the seal, and then permit him to pass it to the attorney, without recording, or copying, or any like proceeding, to secure it against improper alteration; and it would be quite as idle to sustain the objection that it had not been handed to the clerk before the seal was broken, when the only effect would be to subject the party to the trouble of having it re-sealed by the magistrate, and so delivered to the clerk, to be immediately opened by him. It is stated to be within the recollection of members of the bar, now living, that the late Ch. J. *Smith* was accustomed to administer reproof to counsel because they had not opened their depositions immediately upon receiving them, instead of waiting to file them with the clerk and thus cause delay in the preparation for trial. The statutes of February 9, 1791, and of December 31, 1828, contained the same provision on the subject as the present act, and the practice under all of them has been nearly if not quite uniform. No sound reason is perceived for changing it. The deposition of Amos C. Elliot, and the other depositions to which this objection was taken, were, therefore, properly admitted.

Other exceptions are taken to portions of Elliot's deposition. In answer to interrogatory 8, proposed on the direct examination by the defendant, inquiring how much the deponent knew of the horse while owned by L. W. Richardson, he testified that he knew him all the time Richardson owned him, and added: "I told him about the

horse, and advised him to get him." This last statement is objected to by the plaintiff. The facts stated, however, have no materiality in the case. They are entirely immaterial, and it cannot be seen how they can in any way have prejudiced the plaintiff.

Objection was also taken to a portion of the answer to cross-interrogatory 43, that it is not responsive to the question, and that it was drawn from the deponent by a suggestion from the defendant's counsel. The interrogatory is, whether the deponent would be willing to swear, from his knowledge of the horse, that he did not cough while Williams or the Richardsons owned him. The witness was not bound to answer the question categorically — yes or no. He was at liberty to state to what extent he could swear positively, and to qualify his answer in accordance with the knowledge he had upon the subject of the inquiry. His answer is, that he should be willing to swear he never heard him cough; that horses and colts are subject to have the horse-distemper and cough, and that he could not state that he never did cough. Thus far the answer is not objected to, but he adds: "I should say, from his appearance, he never had a cough;" and this is objected to, as not responsive to the question. If the statement were to be understood as meaning that the witness, judging from the appearance of the horse at any particular time, then formed the opinion that he had never before that had a cough, it would be open to the objection taken. It is obvious that this was not his meaning, but that he intended to be understood, and was understood by the jury as meaning only that as he had always known the horse while the Richardsons owned him, and he had never known him to cough, but he had always appeared free from such disease. He could testify upon this ground that he never had a cough. So understood, the part of the answer objected to is strictly responsive to the question. The objection that it was drawn from the witness

by a suggestion from the defendant's counsel, is not sustained by any thing appearing in the case.

The testimony of P. W. Hastings, introduced by the defendant to contradict Williams, might properly be considered by the jury as having such tendency. The statement made by Williams, as testified to by Hastings, that the horse was sound, may have been intended by Williams, and properly understood by the jury, as meaning that he was free from any such disease as the cough to which he testified. It was proper to be submitted to the jury for them to determine, under the circumstances, what was meant by Williams in saying the horse was sound. If they found that he meant, by saying he was sound, that he was free from every thing of the nature of the cough testified to by him, it clearly went to contradict him.

The *ex parte* affidavit of E. B. Parker was properly admitted, to impeach his testimony. The account given by him, in the affidavit of the bills of sale and warranty, and of his recollection upon those subjects, is inconsistent with and contradictory to that which he gave upon the stand. When the witness has given such contradictory and inconsistent account upon a former occasion, thus varying from that given at the trial, it may be proved, for the purpose of impeaching him and casting discredit upon his testimony.

The question proposed to Dr. Dadd, as an expert, was competent. The opinions of such witnesses are admissible in evidence, though they are founded, not upon personal observation, but on the facts shown by the proof at the trial. It is indeed improper to ask an expert, who has heard the evidence, what his opinion may be upon the case, as shown upon the proof, but he may be asked to give his opinion upon a state of facts such as the evidence tends to establish, hypothetically stated. 1 Greenl. Ev., sec. 440. This was the form of inquiry adopted in this case. A

long and, it is believed, uniform practice in this State, as elsewhere, has recognized it as correct.

All the exceptions taken to the proceedings at the trial being overruled, there must be

*Judgment on the verdict.*